UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERRY J. LEGENDRE ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 22-1767** |
| **LOUISIANA INS. GUARANTY ASSOCIATION, ET AL.** | * | **SECTION L** |

## ORDER AND REASONS

Pending before the Court are four motions. Liberty Mutual Insurance Company ("Liberty Mutual") filed a motion for partial summary judgment. R. Doc. 182. Plaintiff Eleanor Legendre filed two motions for summary judgment. R. Docs. 187, 191. Huntington Ingalls Incorporated ("Avondale") filed a motion for partial summary judgment. R. Doc. 192. The parties filed various oppositions and replies. R. Docs. 228, 229, 236, 244. Considering the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This case arises out of decedent Terry Legendre's alleged exposure to asbestos while working for Avondale from October 16, 1967, to January 28, 1968. R. Doc. 1-2 at 2. While he originally filed his suit against Avondale and other defendants in the Orleans Parish Civil District Court, Avondale removed the case to this Court pursuant to 28 U.S.C. 1442(a)(1). R. Doc. 1.

Mr. Legendre alleged that he was employed by Avondale for just over three months. R. Doc. 1-2 at 2. During that time, he alleged that he was directly exposed to asbestos products, which he carried home on his clothes and other belongings. *Id.* Additionally, Mr. Legendre believed that he was further exposed to asbestos by other Avondale employees whom he was friends with and frequently socialized with during times he was not personally employed by Avondale. *Id.* at 3. In December 2021, Mr. Legendre was diagnosed with mesothelioma, a lethal cancer caused by

1

asbestos. *Id.* at 2. On July 26, 2022, Mr. Legendre passed away, and his wife, Eleanor Roux Legendre, was substituted as plaintiff and asserted additional survival actions. R. Doc. 65.

Legendre alleges that Avondale owed a duty to Mr. Legendre and the other Avondale employees he socialized with to provide a safe working environment. *Id.* at 3. Legendre states that Avondale knew, or should have known, of the potential dangers associated with asbestos-causing products. *Id.* Therefore, she accuses Avondale of negligence, intentional concealment, strict liability, failure to warn, and failure to provide proper protective gear, among other causes of action. *Id.* at 4. Legendre also asserts similar claims against numerous other defendants who played a role in causing the deceased's asbestos exposure, including, but not limited to: Hopeman Brothers, Inc., International Paper Company, Paramount Global, General Electric Company, Westinghouse Electric Corporation, Bayer Cropscience, Inc., Foster-Wheeler, LLC, Uniroyal, Inc., Taylor-Seidenbach, Inc., McCarty Corporation, and Eagle, Inc. *Id.* at 4-32.

The defendants filed answers in which they generally deny the allegations set forth in the complaints.[1] *See e.g.*, R. Docs. 108, 109, 112, 113, 114. Avondale also asserts cross-claims and third-party claims against entities that it alleges are liable to Avondale for their respective role in manufacturing, distributing, or otherwise causing Avondale to handle asbestos products. R. Doc. 5. Avondale's third-party claims brought three additional parties into the suit: Zurich American Insurance Company, Liberty Mutual, and Manville Personal Injury Settlement Trust ("Manville"). The cross- and third-party defendants have filed answers to Avondale's claims. R. Docs. 15, 18, 29, 35, 41, 72. Hopeman Brothers also filed a cross-claim against Manville. R. Doc. 29.

Presently before the court are four motions for full or partial summary judgment. R. Docs. 182, 187, 191, 192.

---

[1] Because of the nature of this case, the Legendres have filed several amended complaints. R. Docs. 1-2, 40, 65, 106.

## II. APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## III. DISCUSSION

### a. Terry Legendre had mesothelioma, his mesothelioma was caused by his asbestos exposure, and his death was caused by mesothelioma.

The court begins its discussion on Legendre's first motion for summary judgment regarding Mr. Legendre's exposure to asbestos and resultant mesothelioma. For support, Legendre cites the opinions of several different experts including his pathologist, other treating physicians, and defense experts. R. Doc. 187-1 at 1, 2. No expert disputed whether Mr. Legendre had mesothelioma or that it was caused by his asbestos exposure. *Id.* Further, all experts agree that Mr. Legendre's death was caused by mesothelioma. *Id.* at 2. Because Legendre presents "evidence which would 'entitle [her] to a directed verdict if the evidence went uncontroverted at trial,'" and because no defendant opposes this motion, the court grants summary judgment on these issues in favor of Legendre. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 1135830 (E.D. La. Apr. 18, 2022) (quoting *Int's Shortstop, Inc. v. Rally's, Inc.*, 939 F. 2d 1257, 1264-65 (5th Cir. 1991);

3

*see also Matherne v. Huntington Ingalls Inc.*, No. 22-2656, 2024 WL 249505 (E.D. La. Jan. 23, 2024); Further, the Court stresses that this finding does not prevent any defendant from presenting evidence or arguments to the jury regarding specific causation of Mr. Legendre's mesothelioma.

### b. Avondale Interests May Not Invoke Government Contractor Defenses Against Legendre's Failure to Warn and Failure to Implement Safety Measures Claims.

Next, Legendre moves this Court to prohibit Avondale, Certain Underwriters at Lloyd's London, and Sparta Insurance Company (collectively, the "Avondale Interests") from utilizing the government contractor defenses set forth in *Boyle v. United Technologies Corporation* and *Yearsley v. W.A. Ross Construction Company* to "immunize Avondale's failure to warn of the health hazards of asbestos and its failure to implement safety measures that would have prevented the uncontrolled spread of asbestos dust that caused" Mr. Legendre's asbestos exposure.[2] R. Doc. 191-1 at 1; 487 U.S. 500 (1988); 309 U.S. 18 (1940). Legendre argues that her motion is substantively identical to other motions on this subject which other sections of this Court have previously granted. R. Doc. 191-2 at 3; *See e.g.*, *Falgout v. Anco Insulations., Inc.*, No. 21-1443, 2022 WL 7540115 (E.D. La. Oct. 13, 2022); *Adams v. Eagle, Inc.*, No. 21-694, 2022 WL 4016749 (E.D. La. Sept. 2, 2022); *Matherne v. Huntington Ingalls Inc.*, No. 22-2656, 2024 WL 216925 (E.D. La. Jan. 19, 2024). In opposition, Avondale argues that the present matter is unique from those circumstances because the plaintiffs in those cases strictly raised claims of failure to warn and failure to enact safety measures against Avondale Interests. Here, however, Avondale argues that Legendre alleges claims of general negligence and strict liability in addition to her claims for

---

[2] "The *Boyle* government contractor defense provides immunity from state law tort claims for certain government contractors for product design defects when '(1) the Untied States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Matherne*, 2024 WL 216925 at *2 (quoting *Boyle*, 487 U.S. at 512).

"The *Yearsley* defense shields government contractors whose work was (1) authorized and directed by the Government of the Untied States and (2) performed pursuant to an Act of Congress." *Id.*

4

failure to warn and failure to enact safety measures. In her reply, Legendre stresses that she strictly moves for summary judgment on the use of these defenses for her claims of failure to warn and enact safety measures.

The court in *Matherne v. Huntington Ingalls, Incorporated*, dealt with this exact issue and granted summary judgment. 2024 WL 216925. In that mesothelioma case, the same motion was raised and Avondale offered the same arguments as the present matter. The court explained that several sections of this court have already addressed why Avondale Interests do not have a valid *Boyle* or *Yearsley* defense for claims of failure to warn and enact safety measures asserted against them. Additionally, there had been no developments in the law that suggest the court should reach a different holding regarding such claims. It further refused to comment on the applicability of such defenses against plaintiffs' general negligence and strict liability claims against Avondale Interests because that issue was not before the court. Thus, the court granted summary judgment.

Presently, the Court finds Avondale's arguments ring hollow. Avondale offers no novel evidence that other sections of this Court have not previously addressed. *See e.g.*, *Matherne*, 2024 WL 216925 (finding that Avondale Interests cannot invoke *Boyle* or *Yearsley* defenses against a plaintiff's failure to warn and enact safety measures claims though plaintiffs additionally asserted strict liability and general negligence claims against them); *Falgout*, 2022 WL 7540115 (rejecting the applicability of the government contractor defenses against plaintiff's claims for failure to warn about the dangers of asbestos and failure to prevent the spread of asbestos). *Adams*, 2022 WL 4016749 (holding that Avondale Interests cannot invoke the government contractor defenses against failure to warn and to prevent the spread of asbestos claims because (1) no conflict existed between federal and state law, (2) Avondale's contracts with the government did not show government regulations requiring that Avondale refrain from warning their employees about hazards associated with asbestos, (3) the contracts further did not provide a specification regarding

5

asbestos usage and storage, and (4) the negligence occurred "wholly outside" the contracts); *Broussard v. Huntington Ingalls, Inc.*, No. 20-836, 2021 WL 5448795 (E.D. La. Nov. 22, 2021) (same). Because Legendre only seeks to prevent Avondale Interests from using *Boyle* and *Yearsley* defenses with regard to her claims against them for failure to warn and enact safety measures and for the reasons expressed by every other court in this section that has already addressed this issue, the Court grants summary judgment. In reaching this conclusion, the Court stresses that the Avondale Interests may not use the government contractor defenses *only* for those claims listed in Legendre's motion.

### c. Liberty Mutual is Entitled to Summary Judgment on the Professional Vendor and/or Commercial Supplier Claim.

#### i. Liberty Mutual's Motion is Unopposed.

Next, Liberty Mutual moves for partial summary judgment on the issue of whether Wayne was a professional vendor of asbestos-containing wallboards. Regarding the underlying incident, Avondale sued Liberty Mutual in its capacity as alleged insurer of Wayne. Avondale alleges that Wayne was a manufacturer, seller, supplier, and/or professional vendor of asbestos-containing wallboards. Presently, while Avondale does not oppose Liberty Mutual's motion, Plaintiff does. R. Doc. 228. However, Legendre is not adverse to Liberty Mutual as it did not file suit directly against Liberty Mutual. Accordingly, the Court first addresses whether the Legendre's response to Liberty Mutual's motion can even be considered as an opposition.

Other sections of this court have previously dealt with this issue and found that in factually similar circumstances, plaintiffs do not have standing to oppose Liberty Mutual's motion. In another asbestos exposure case, the court in *Cortez v. Lamorak Insurance Company* considered Liberty Mutual's motion as unopposed. No. 20-2389, 2022 WL 3370149 (E.D. La. Aug. 16, 2022). Like the instant matter, Liberty Mutual was a party to that suit due to Avondale's third-party

6

demand against it.[3] There, Liberty Mutual moved the court for partial summary judgment on the same issue that is presently before the Court. While Avondale did not oppose Liberty Mutual's motion, plaintiffs did. However, the court did not consider plaintiffs' response as an opposition because "it is the non-moving claimant who bears the burden of pointing to evidence creating a material fact issue once the moving party has asserted that there is no material factual dispute and that it is entitled to a judgment as a matter of law." *Id.* at *3. Accordingly, the court found that the plaintiffs lacked standing to oppose Liberty Mutual's motion and that the motion was unopposed for the purposes of partial summary judgment. Likewise, the court in *Becnel v. Lamorak Insurance Company* reached the same conclusion. No. 19-14536, 2022 WL 3369161 at *2 (E.D. La. Aug. 16, 2022) ("Liberty Mutual is not an adverse party to plaintiffs; thus, plaintiffs have no standing to challenge the instant motion.").

Though both the *Cortez* and *Becnel* courts considered Liberty Mutual's motion as unopposed, that alone "does not give [courts] the authority to grant it as unopposed." *Id.* Both courts evaluated the merits of motion because "summary judgment may only be granted 'if the undisputed facts show that the movant is entitled to judgment as a matter of law.'" *Id.*

Here, Legendre is not an adverse party to Liberty Mutual. Thus, Legendre has no standing to challenge Liberty Mutual's motion and the motion is unopposed for the purposes of Rule 56. The Court now looks to the merits of the motion to determine whether the undisputed facts show that Liberty Mutual is entitled to judgment as a matter of law.

### ii. Liberty Mutual Cannot Be Held Liable Under Professional Vendor and/or Commercial Supplier Strict Liability.

Under Louisiana law,[4] "professional vendors" are held to the same standard of liability as

---

[3] In that case, plaintiffs did not assert a claim against Wayne or Liberty Mutual.
[4] Louisiana law governs the instant matter.

7

manufacturers. *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926 (La. 1978); *Becnel*, 2022 WL 3369161; *Cortez*, 2022 WL 3370149. To be held liable as a professional vendor, "a seller must (1) hold a product out to the public as its own and (2) operate with the requisite size, volume and merchandising practices, such as the firm is presumed to know the defects of its wares." *Cortez*, 2022 WL 3370149 at *4 (internal quotation omitted). Accordingly, professional vendors are "retailer[s] who do[] more than simply sell a certain product or products; [they] must engage in practices where [they are] capable of controlling the quality of the product, such that courts are justified in treating the retailer[s] like [] manufacturer[s]." *Roy v. Colgate Palmolive Co.*, No. 20-3433, WL 1574038, at *3 (E.D. La. Apr. 22, 2021).

  Here, Liberty Mutual avers that Wayne cannot be held liable under this theory of liability because it was not a professional vendor. R. Doc. 182. Instead, Liberty Mutual argues that Wayne simply glued non-asbestos containing wallboard materials to a Marinite core for Avondale's joiner subcontractor, Hopeman Brothers. *Id.* It further avers that Wayne never owned the finished product, held the finished product out as its own, and was not involved in merchandising activities. *Id.* It further avers that Hopeman Brothers is the entity that supplied the finished wallboards to Avondale and no evidence has been presented on whether anyone at Avondale identified the wallboards as Wayne's. Without any evidence to contradict Liberty Mutual's contentions, summary judgment on this issue is proper. Accordingly, the Court grants summary judgment on the issue of whether Wayne was a professional vendor of asbestos.

  In a similar vein, the Court finds that Avondale's commercial supplier strict liability claim against Liberty Mutual must be dismissed as well. Another section of this court has previously found that such a claim is not cognizable under Louisiana law because of the lack of legal support for such liability. *Becnel*, 2022 WL 3369161, at *4 (finding that "commercial supplier" liability is not a distinct theory of liability and such claims should be analyzed by "applying strict product

liability principles"). Additionally, Avondale has not opposed Liberty Mutual's motion for summary judgment on this "claim." Accordingly, the Court grants summary judgment on the issue of whether Wayne is strictly liable as a "commercial supplier."

### d. Avondale is Entitled to Summary Judgment on Legendre's Intentional Tort and Fraud Claims Against It.

#### i. Intentional Tort Claims

Next, Avondale seeks to dismiss Legendre's intentional tort claims against it. Legendre attempts to establish that the decedent's mesothelioma was caused by exposure to asbestos because of the hazardous working environment at Avondale and that Avondale committed an intentional tort. To prove an intentional tort, Legendre must show that Avondale either consciously desired that the decedent contract mesothelioma, or knew that the result was "substantially certain to follow from its conduct." *Cortez v. Lamorak Ins. Co.*, 597 F. Supp. 3d 959, 976 (E.D. La. Apr. 4, 2022). "Substantial certainty requires more than a reasonable probability that an injury will occur" and Legendre must prove that the decedent's mesothelioma was "inevitable or incapable of failing." *Id.*; *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999). Avondale's "belie[f] that some may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts." *Cortez*, 597 F. Supp. 3d at 976 (quoting *Reeves*, 731 So. 2d at 213). To prevail, Legendre must show that Avondale's "conduct went beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job or willfully failing to furnish a safe place to work." *Becnel*, 2022 WL 3665085, at *3 (quoting *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005)).

Several sections of this Court have considered an intentional tort claims against Avondale arising out of asbestos exposure. *See e.g.*, *Vedros v. Northop Grumman Shipbuilding, Inc.*, No. 11-

1198, 2014 WL 906164 (E.D. La. Mar. 7, 2014); *Cortez*, 597 F. Supp. 3d 959; *Becnel*, 2022 WL 3665085. In *Vedros v. Northop Grumman Shipbuilding, Inc.*, plaintiffs argued that Avondale had awareness of the risks associated with asbestos as well as unsafe working conditions, and despite this knowledge, Avondale did not remedy those conditions. 2014 WL 906164, at *3. The court granted summary judgment and found that "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware there was a major risk, or even a probability, that [the decedent] would contract mesothelioma," plaintiffs did not provide evidence that would allow a reasonable jury to determine "that [the decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from" Avondale's conduct. *Id.* Similarly in *Cortez*, the Court found that the plaintiff's general assertions that Avondale "knew that asbestos was a health hazard," that asbestos "caused fatal lung disease," and that Avondale "had problems with it . . .falls short of what is necessary to raise a material issue for an intentional-tort claim." 597 F. Supp. 3d at 959. Likewise in *Becnel*, the court held that "even assuming the defendants were aware that the alleged asbestos from their respective products was dangerous, and they should have used precautionary measures," plaintiffs failed to meet their evidentiary burden "whereby a reasonable juror could conclude that [the plaintiff's] primary lung cancer was 'inevitable or incapable of failing.'" 2022 WL 3665085 at *4.

Like the evidenced produced by plaintiffs in *Vedros*, *Cortez*, and *Becnel*, the evidence Legendre presents in this case falls below the bar of what is needed to raise a material issue for an intentional tort claim. Like the plaintiff in *Becnel*, Legendre here cites to several parts of the decedent's testimony where he testified that he was exposed to various asbestos-containing products while working at Avondale. Further like the plaintiffs in *Becnel*, Legendre refers to several of her own experts' reports and declarations to support her claim. R. Doc. 229. Legendre argues that through such reports, the experts concluded the decedent was often exposed to

10

significant concentrations of asbestos while working at Avondale and his exposure to such products significantly increased his risk for developing mesothelioma. Legendre additionally cites to the Louisiana Workers' Compensation Act, the Walsh Healey Act, and the 1943 Louisiana Sanitary Code for support that Avondale had notice of the hazards of asbestos.

However, viewing this evidence in the light most favorable to Legendre, it is still not enough for this Court to deny summary judgment. Legendre did not submit any evidence suggesting that Avondale consciously intended to harm the decedent or that his mesothelioma was "inevitable or incapable of failing." Even assuming *arguendo* that Avondale had awareness that workplace exposure to asbestos was dangerous and that they should have utilized precautionary measures, Legendre still fails to bring forward sufficient evidence "whereby a reasonable juror could conclude that the [decedent's mesothelioma] was inevitable" such that it was substantially certain to result from Avondale's conduct. *Becnel*, 2022 WL 3665085 at *4. Accordingly, the Court finds Legendre's claim against Avondale "lies in the realm of negligence, not in the realm of intentional tort." *Cortez*, 597 F. Supp. 3d at 977. Thus, Avondale is entitled to summary judgment dismissing Legendre's intentional tort claim against it.

    ii. **Fraud/Concealment Claims**

Lastly, Legendre alleges that Avondale "was aware of the hazards of asbestos, and what precautionary measures should be taken, but chose to remain silent and failed to institute necessary precautionary measures." R. Doc. 229. Accordingly, Legendre's fraud theory is based on omissions, rather than affirmative misrepresentations. *Becnel*, 2022 WL 3665085, at *4.

Fraud, under Louisiana law, "is a misrepresentation or a suppression of truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Fraud may also arise from silence or inaction. *Id.* To prevail on a fraud and intentional misrepresentation claim under state law, Legendre must prove:

11

> (1) a misrepresentation, suppression, or omission of true information;
> (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and
> (3) the error induced by a fraudulent act must relate to the circumstance substantially influencing the victim's consent to a cause of the contract.

*Becnel*, 2022 WL 3665085, at *4.

"Although fraud may result from silence or inaction, 'mere silence or inaction without fraudulent intent does not constitute fraud.'" *Id.* Additionally, fraud cannot be predicated upon gross negligence. *See id.*

Legendre has not satisfied her burden of proof on this claim. Specifically, she has failed to present any evidence to fulfill the element of fraudulent intent. In *Becnel*, the Court reached the same conclusion because plaintiffs in that case did not "point[] to any evidence which would allow for the reasonable inference that the defendants acted with a fraudulent state of mind." *Id.* at *4-*5. But instead, plaintiffs simply alleged that the defendants were silent regarding the dangerous nature of asbestos-containing products. Without providing any evidence that the defendants had any fraudulent intent, the Court found that plaintiff's "unsupported assertion is not enough to withstand summary judgment." *Id.* at *5.

Similarly, here, the Court finds that the evidence set forth by Legendre does not support the assertion that Avondale acted with fraudulent intent. Even if the evidence suggests that Avondale was aware of the risks associated with exposure to asbestos products and did not warn Mr. Legendre of the hazards, but instead, chose to remain silent, these assertions alone "without fraudulent intent do[] not constitute fraud." *Id.* Thus, because Legendre has not produced any evidence to raise a genuine issue of material fact with respect to Avondale's fraudulent intent, Avondale is entitled to summary judgment on Legendre's fraud claims.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Legendre's Motion for Partial Summary Judgment, R. Doc. 182 and R. Doc. 191 are **GRANTED**. Avondale Interests may not invoke the government contractor defenses *only* for those claims listed in Legendre's motion. **IT IS FURTHER ORDERED** that Liberty Mutual's Motion for Partial Summary Judgment, R. Doc. 187, is **GRANTED**. **IT IS FURTHER ORDERED** that Avondale Motion for Partial Summary Judgment, R. Doc. 192, is **GRANTED**.

New Orleans, Louisiana, this 9th day of April, 2024.

_____
United States District Judge