UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERRY J. LEGENDRE ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 22-1767** |
| **LOUISIANA INS. GUARANTY ASSOCIATION, ET AL.** | * | **SECTION L** |

## ORDER AND REASONS

Pending before the Court are three motions. First, a motion for summary judgment by Hopeman Brothers Inc. ("Hopeman"). R. Doc. 206. Huntington Ingalls Incorporated ("Avondale") and Plaintiff Eleanor Legendre oppose the motion. R. Docs. 218, 227. Second, a motion to stay by SPARTA Insurance Company ("SPARTA"). R. Doc. 198. Legendre opposes the motion. R. Doc. 231. Third, SPARTA filed a motion for expedited consideration of its motion to stay. R. Doc. 277. Considering the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This case arises out of decedent Terry Legendre's alleged exposure to asbestos while working for Avondale from October 16, 1967, to January 28, 1968. R. Doc. 1-2 at 2. The Court is familiar with the extensive factual history of this case and will not repeat it here. See R. Doc. 276 for a full history. Presently before the court is Hopeman's motion summary judgment, R. Doc. 206, and Sparta's motion to stay. R. Doc. 198.

### II. LAW & ANALYSIS

#### a. Hopeman Brothers' Motion for Summary Judgment

##### i. Motion for Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view

1

the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### ii. Hopeman is Not Liable for the Intentional Tort Claim Asserted Against It.

First, Hopeman asks the Court to grant its motion for summary judgment as to intentional tort. To succeed on this claim, Legendre must prove that Hopeman "either consciously desired that [the decedent] contract [mesothelioma] or knew that the result was substantially certain to follow from its conduct." *Becnel, et al. v. Lamorak Ins. Co.*, No. 19-14546, R. Doc. 788, at *6 (E.D. La. June 13, 2022). Legendre does not appear to allege that Hopeman intended for the decedent to contract mesothelioma, and for Legendre to demonstrate that Hopeman knew such a disease would result by a substantial certainty, she needs to prove more than Hopeman "knowingly permitting a hazardous work condition to exist." *Id.* (citing *Zimko v. Am. Cyanamid*, 905 So.2d 465, 475 (La. App. 4th Cir. 2005)). Legendre presents evidence that Hopeman was aware of the potential hazards of their product, but none of that evidence rises to the level of showing that Hopeman was substantially certain that the decedent's mesothelioma would result. Therefore, this Court will grant partial summary judgment dismissing Legendre's intentional tort claim as a matter of law.

### iii. Hopeman is Not the Alter Ego of Wayne Manufacturing Corporation.

Second, Hopeman moves for partial summary judgment that it is not the alter ego of its

subsidiary, Wayne Manufacturing Corp. ("Wayne"). Other decisions in this district have also considered this issue with differing results. *Compare Matherne v. Huntington Ingalls Inc.*, No. 22-2656, 2024 WL 268456, at *3 (E.D. La. Jan. 24, 2024) *and Cortez, et al. v. Lamorak Ins. Co.*, No. 20-2389, R. Doc. 1142 (E.D. La. Aug. 10, 2022) (granting summary judgment that Wayne is not the alter ego of Hopeman) *with Becnel, et al. v. Lamorak Ins. Co., et al.*, No. 19-14546, R. Doc. 788, at *17 (E.D. La. June 13, 2022) (denying summary judgment that Wayne is not the alter ego of Hopeman). Those cases largely considered the eighteen non-exhaustive factors set out in *Green v. Champion Insurance Company*, 577 So. 2d 249, 257-58 (La. App. 1st Cir. 1991) to help determine whether the corporate veil should be pierced:

> 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> 2. common directors or officers;
> 3. unified administrative control of corporations whose business functions are similar or supplementary;
> 4. directors and officers of one corporation act independently in the interest of that corporation;
> 5. corporation financing another corporation;
> 6. inadequate capitalization ("thin incorporation");
> 7. corporation causing the incorporation of another affiliated corporation;
> 8. corporation paying the salaries and other expenses or losses of another corporation;
> 9. receiving no business other than that given to it by its affiliated corporations;
> 10. corporation using the property of another corporation as its own;
> 11. noncompliance with corporate formalities;
> 12. common employees;
> 13. services rendered by the employees of one corporation on behalf of another corporation;
> 14. common offices;
> 15. centralized accounting;
> 16. undocumented transfers of funds between corporations;
> 17. unclear allocation of profits and losses between corporations; and
> 18. excessive fragmentation of a single enterprise into separate corporations.

*Id.* "All factors need not be present in order to find that there is a single business enterprise, nor is this an exhaustive list of relevant considerations." *Matherne*, 2024 WL 268456, at *3. This Court is of the opinion that there are not enough factors present here to warrant veil-piercing, which the Louisiana Supreme Court has stated is "an extraordinary remedy." *Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1128. Here, there are several factors that weigh in favor of not piercing the veil. While Hopeman admits that it owned Wayne and, at some points, shared certain officers, it also argues that the two maintained separate accounting, checking accounts, and tax returns. R. Doc. 206 at 14. Moreover, because Legendre has not successfully identified any extraordinary circumstances such as fraud that might elevate these factors to the level of justifying the single business enterprise theory, *see* R. Doc. 227 at 19, the Court will grant Hopeman's motion on this issue.

### iv. Hopeman is Not a Manufacturer of Asbestos-Containing Products.

Third, Hopeman asks this Court to dismiss Legendre's manufacturer strict liability claim against it. R. Doc. 206. A plaintiff can recover against a manufacturer by "proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use." *Becnel*, 2022 WL 3369163, at *2 (E.D. La. Aug. 16, 2022). Hopeman argues that it did not manufacture any asbestos products and was merely a subcontractor that provided wallboard to Avondale. R. Doc. 2016 at 24. Legendre, however, asserts that Hopeman should be held liable as a manufacturer for its own modification and assemblage of wallboards for Avondale. R. Doc. 227 at 24-25.

As Hopeman notes, other sections of this court have granted Hopeman's motion for summary judgment on this same issue in other asbestos cases. *Matherne*, 2024 WL 268456, at *4; *Cortez*, 2022 WL 3716628, at *4; *Adams v. Eagle, Inc.*, No. 21-694, 2022 WL 4110343, at *6

4

(E.D. La. Sept. 8, 2022). This Court agrees with those other decisions, particularly where the facts show that Hopeman merely provided a "joiner" service to Avondale. R. Doc. 227 at 24-25. This service included pasting together wallboard using non-asbestos glue. *Id.* at 3. As another section of this court concluded in *Matherne v. Huntington Ingalls, Incorporated*, "[t]o deem Hopeman a manufacturer would be to deem all joiners, carpenters, sheet rock installers, and other subcontractors as manufacturers of a finished product. Such an absurd result is certainly outside of the definition of a manufacturer . . . ." 2024 WL 268456, at *4. Thus, the Court holds that Hopeman is not a manufacturer and grants its motion for partial summary judgment.

### v. Factual Questions Remain as to Whether Hopeman was a Professional Vendor of Asbestos-Containing Products.

Fourth, Hopeman requests summary judgment that it was not a professional vendor of asbestos-containing products as a matter of law. This Court has previously articulated the law surrounding professional vendor liability. *See* R. Doc. 276. Of relevance, "to be held liable as a professional vendor, 'a seller must (1) hold a product out to the public as its own and (2) operate with the requisite size, volume and merchandising practices, such that the firm is presumed to know the defects of its wares." *See id.* Thus, "professional vendors are 'retailers who do more than simply sell a certain product or products; they must engage in practices where they are capable of controlling the quality of the product, such that courts are justified in treating the retailers like manufacturers.'" *See id* (internal citation omitted).

In *Cortez v. Lamorak Insurance Company*, another section of this Court addressed the same issue under factually similar circumstances to the present case.[1] 2022 WL 3716628 (E.D. La. Aug. 29, 2022). In that case, Hopeman moved for summary judgment on plaintiffs' professional vendor

---

[1] There, Avondale contracted with Hopeman for joiner work, and pursuant to those contracts Hopeman furnished and installed asbestos-containing wallboard on vessels at Avondale's worksite.

liability claim and the Court denied the motion because there were material fact questions on this issue. *Id.* at *5. First, plaintiffs had introduced evidence suggesting that Hopeman had control over the quality of the product because of Hopeman's familiarity with the wallboard products and its control over selecting the wallboard components. *Id.* Second, evidence introduced suggested that Hopeman held the wallboard product out as its own because the contracts between Avondale and Hopeman acknowledged Hopeman as the supplier of the wallboard. *Id.* For example, the Court found that Hopeman purchased the wallboard components, directed Wayne to assemble the wallboard, which was then sent to Avondale. *Id.* Lastly, the court noted that factual questions were created regarding whether Hopeman was operating with the scale necessary to be deemed as a professional vendor. *Id.* For instance, Hopeman performed joiner work at Avondale for at least thirty years and during that time it furnished asbestos-containing products for installation on dozens of vessels at Avondale. *Id.* Accordingly, the Court denied summary judgment. *Id.*

Similarly, here the court finds that material factual questions exist as to whether Hopeman had control over the quality of its wallboard, held the wallboard out as its own, and operated with the scale necessary to be deemed a professional vendor. Hopeman played a substantially similar role in *Cortez* as it did in the instant matter as it was also responsible for joiner work and installing wallboard on Avondale vessels. Accordingly, for the reasons stated above and as explained in *Cortez*, the Court denies summary judgment on this issue.

    b. **SPARTA's Motion to Stay**

Next, SPARTA asks this Court to stay Legendre's claims against it under Louisiana's Direct Action Statute. R. Doc. 198-1. SPARTA notes that it is a successor to liability for policies that American Employers' Insurance Company ("AEIC") issued to Avondale executives during the relevant time period. *Id.* at 1, 2. SPARTA alleges that it is currently a party to litigation in the

6

United States District Court of Massachusetts that is examining SPARTA's responsibility for AEIC's policies following a stock purchase agreement between SPARTA and Pennsylvania Insurance Company ("PIC"). *Id.* at 8. Because SPARTA argues that the issues in that case are virtually identical to the ones in the instant matter—whether it is liable for AEIC's past-issued policies, including the ones issued to Avondale—SPARTA asks this Court to stay the current proceedings under the Fifth Circuit's first-to-file rule. *Id.* at 2. SPARTA contends that a stay would avoid duplicative efforts, waste, and potentially inconsistent outcomes. *Id.*

In opposition, Legendre argues that the Massachusetts litigation is not relevant to her Direct Action claim against SPARTA in the present suit. *Id.* at 2. Legendre notes that SPARTA is AEIC and merely changed its name to SPARTA in 2007. *Id.* Moreover, Legendre contends that, whether PIC would indemnify SPARTA pursuant to their stock purchase agreement is not a concern relevant to Legendre's claims. *Id.* at 3; La. Civ. Code § 1821. Accordingly, Legendre argues that the first-to-file rule does not apply to Legendre's claims because there is no substantial overlap between the Massachusetts action and Legendre's. R. Doc. 231 at 4-9. Legendre also argues that SPARTA's reliance on other cases in the Eastern District of Louisiana is misplaced because none of them involve claims against just SPARTA, as the present case does. *Id.* at 13-14.

The Fifth Circuit has explained that "[u]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). It is within the district court's discretion in determining whether an action should be stayed under the "first to file" rule. *Id.* at 677 (quoting *Cadle Co.*, 174 F.3d at 603). The "first to file" rule is grounded in the principle of comity which "requires federal district

courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)).

The rule does not require that the cases be identical in nature; rather, a court with the later-filed action may stay an action if the there is "substantial overlap" between the cases. *Id.* (quoting *Save Power Ltd.*, 121 F.3d at 950). "Substantial overlap" exists where the two actions share the same substantive "core issues" and where "much of the proof adduced ... would likely be identical." *Id.* (citing *West Gulf Maritime Ass'n*, 751 F.2d at 730; quoting *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd.*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

Here, the Court is not convinced that the present action substantially overlaps with the Massachusetts litigation for purposes of the first-to-file rule. As Legendre notes, the only common party to both actions is SPARTA, and the issue of whether PIC has an obligation to indemnify SPARTA is not relevant to the current proceeding. *See* R. Doc. 231 at 7-8. The main issue in the current proceeding is whether SPARTA is liable to Legendre. *Id.* at 3. Moreover, the cases SPARTA cites all assert claims against PIC, whose liability for SPARTA's insurance contracts is

8

questionable and is the subject of the Massachusetts action. *Id.* at 13-14. The present case involves a Direct Action claim against SPARTA alone, as SPARTA was the original obligee to Avondale. Therefore, the Court will deny SPARTA's motion to stay.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Hopeman's Motion for Summary Judgment, R. Doc. 206, is **GRANTED**, in part and **DENIED**, in part. **IT IS FURTHER ORDERED** that SPARTA's Motion to Stay, R. Doc. 198, is **DENIED** and SPARTA's Motion for Expedited Consideration, R. Doc. 277, is **DENIED** as **MOOT**.

New Orleans, Louisiana, this 15th day of April, 2024.

_____
United States District Judge